# 14-1335-cv

In the

# United States Court of Appeals
## For the Second Circuit

IRINA KANDERSKAYA,

*Plaintiff-Appellant,*

-v.-

THE CITY OF NEW YORK,
COMMISSIONER RAYMOND KELLY, New York City, (in his official capacity)
P.O. RONALD PEREIRA, New York City, (in his official and individual capacity)
P.O. ZAYDA NATAL, New York City, (in her official and individual capacity)
P.O. JOHN P. MOGULA, New York City, (in his official and individual capacity)

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

GARRY POGIL
*Attorney for Irina Kanderskaya (Plaintiff-Appellant)*
112 West 34th Street, 18th Floor
New York, New York 10120
(917) 593-1466

## TABLE OF CONTENTS

TABLE OF AUTHORITIES….. …………………………………… page 3-5

STATEMENT OF JURISDICTION ………………...……………. page 6

STATEMENT OF ISSUES …………………………….…...…….. page 6-7

NATURE OF THE CASE …………………………………………... page 7-9

STATEMENT OF FACTS ……………………………………….. page 9-16

SUMMARY OF ARGUMENT …………………………………….page 17-18

*ARGUMENT*

*POINT I*

THE PLAINTIFF HAS MET HER PLEADING REQUIREMENTS
AS TO FALSE ARREST AND THE DISTRICT COURT
ERRED IN RULING THAT DEFENDANTS HAD PROBABLE
CAUSE TO ARREST THE PLAINTIFF FOR ALL THREE
ARRESTS…………………………………………………………….…. page 18-32

*POINT II*

THE DEFENDANTS DID NOT HAVE PROBABLE CAUSE TO
ARREST THE PLAINTIFF FOR ALL THREE ARRESTS AND
THE PLAINTIFF HAS MET HER PLEADING REQUIREMENTS
AS TO MALICIOUS PROSECUTION ……………………………… page 33

*POINT III*

DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
IMMUNITY……………………………………………………………page 33-34

*POINT IV*

THE PLAINTIFF HAS MET HER PLEADING BURDEN AS
TO THE ALLEGATIONS OF MUNICIPAL LIABILITY ……………page 34-37

*POINT V*

DECLARATORY RELIEF IS NEEDED IN THIS CASE …………….page 38-39

*POINT VI*

STATE LAW CLAIMS WERE PROPERLY RAISED
IN THE COMPLAINT ……………………………………………....page 39

*POINT VII*

THERE IS NO BASIS TO DISMISS ALLEGATIONS
RELATING TO INTENTIONAL AND NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS UNDER
42 U.S.C. §1983 ………………………………………………..page 40

*POINT VIII*

PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES
AS TO THE INDIVIDUAL DEFENDANT POLICE
OFFICERS, PEREIRA, NATAL AND MOGULA .…………………...page 40-41

CONCLUSION
……………………………………………………………………..page 41-42

CERTIFICATION ……………………………………………………...page 43

## TABLE OF AUTHORITIES

<u>Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis</u>
2006 WL 2289847 (S.D.N.Y. 2006) ………………………………………page 19

<u>Bolt Elec., Inc. V. City of New York</u>,
53 F.3d 465 (2d Cir.1995) ………................................................................page 19

<u>Bullard v. City of New York</u>
240 F.Supp.2d 292 (S.D.N.Y. 2003)………………pages 8,17,21,22,25,31,33,34

<u>Candelario v. City of New York</u>
No. 13-1621-cv (2d Cir. Nov. 7, 2013)..........................................................page 34

<u>Carthew v. County of Suffolk</u>,
709 F. Supp. 2d 188 (E.D.N.Y. 2010) …………………………………….. page 32

<u>Chambers v. Time Warner</u>,
282 F3d 147, 153 (2d Cir. 2002)…………………………………………... page 19

<u>Connick v. Thompson</u>,
131 S.Ct. 1350 (2011) …………………………………………………….. page 35

<u>Dudley v. Torres</u>,
2008 U.S. Dist. LEXIS 40850 (E.D.N.Y. 2008) ……................................. page 32

<u>Erickson v. Pondus</u>,
127 S. Ct. 2197(2007)……………………………………………………... page 19

<u>Fincher v. County of Westchester</u>,
979 F.Supp. 989 (S.D.N.Y. 1997) ………………………………………… page 20

<u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>,
412 F.3d 360 (2d Cir. 2005)……………………………………………….. page 19

<u>Harlow v. Fitzgerald</u>,
457 U.S. 800 (1982) ……………………………………………………… page 33

3

Harris v. City of New York,
186 F.3d 243 (2d Cir.1999)……………………………………………… page 19

In re Southeast Banking Corp.,
69 F.3d 1539 (11th Cir. 1995)…………………………………………… page 20

Jocks v. Tavernier,
316 F.3d 128 (2d Cir. 2003)……………………………….………... page 20

Jones v. Town of E. Haven,
691 F.3d 72 (2d Cir. 2012)………………………………………………pages 35, 37

Kramer v. Time Warner Inc.,
937 F.2d 767 (2d Cir. 1991)…………………………………………….......page 19

Miloslavsky v. AES Eng'g Society,
808 F. Supp. 351 (S.D.N.Y. 1992).............................................................. page 30

Mistretta v. Prokesch,
5 F.Supp.2d 128 (E.D.N.Y. 1998) ………………………………...pages 8, 17, 22, 25

Monell v. New York City Dep't of Social Services,
436 U.S. 658 (1978)……………………………………………………... page 34

Murphy v. Lynn,
118 F.3d 938 (2d Cir. 1997)………………………………………….….. page 22

Oliveira v. Mayer,
23 F.3d 642, 647 (2d Cir. 1994) ………………………….……..pages 8, 17, 21, 25

Otero v. Jennings,
698 F. Supp. 42 (S.D.N.Y. 1988) ………………………………….……. page 32

Panetta v. Crowley,
460 F.3d 388 (2d Cir. 2006)……………………………………….….. page 30

Sankar v. City of New York,
867 F. Supp.2d 297 (E.D.N.Y. 2012)……………………………………… page 23

4

Singer v. Fulton County Sheriff,
63 F.3d 110 (2d Cir. 1995) ………………………………………. page 23,25,39

Smith v. City of New York,
388 F. Supp. 2d 179 (S.D.N.Y. 2005) ……………………………….…. page 30

Spruill v. Levy,
2008 U.S. Dist. LEXIS 64293 (S.D.N.Y. 2008) ………………………… page 32

Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002)…………………………………………….……… page 20

Torino v. Rieppel,
No. 07-CV-1929 (JFB)(ETB) (E.D.N.Y. 2009) …………………….…… page 31

United States v. Fisher,
702 F.2d 372 (2d Cir. 1983)……………………………………….…. page 8,17,25

Weyant v. Okst,
101 F.3d 845 (2d Cir. 1996)…………………….…………………….. page 22

Statutes

42 U.S.C. §1983 ………………………………...………..……...page 1,5,6,8,34,40

28 U.S.C. §1367(a) …………………………………………………...….page 39

Fed. R. Civ. P. §§8(a)(2), 12(b)(6) and 12(c) ……………………………... page 20

N.Y.C.P.L. §140.10(4)(c) …………………………………………….... page 26,27

## STATEMENT OF JURISDICTION

The Plaintiff filed a Complaint in the U.S. District Court for the Southern

District of New York, which states that jurisdiction is based on 28 U.S.C. §§1331

and 1343(a)(3) and (4). (A-10). The Plaintiff alleges, inter alia, constitutional

violations of her civil rights, pursuant to 42 U.S.C. §1983. The Plaintiff also seeks

a declaratory judgment.

On April 10th, 2014, Judge Hellerstein granted the Defendants' motion to

dismiss the Complaint on the pleadings pursuant to Fed.R.Civ.P. 12(c). (A-73-85).

Such constituted a final order and judgment in the district court. The Plaintiff filed

a timely appeal on April 24th, 2014 (A-86).

The U.S. Court of Appeals for the Second Circuit has jurisdiction to hear the

Plaintiff's appeal pursuant to 28 U.S.C. §1291, in that the decision being appealed

constituted the final judgment and order in this case in the district court. (A-73-

85).

## STATEMENT OF ISSUES

Issue I    WHETHER THE DEFENDANTS HAD PROBABLE CAUSE
           TO ARREST THE PLAINTIFF FOR ALL THREE ARRESTS
           AND WHETHER THE PLAINTIFF HAS MET HER PLEADING
           REQUIREMENTS AS TO FALSE ARREST

6

Issue II      WHETHER THE DEFENDANTS HAD PROBABLE CAUSE
              TO ARREST THE PLAINTIFF FOR ALL THREE ARRESTS
              AND WHETHER THE PLAINTIFF HAS MET HER PLEADING
              REQUIREMENTS AS TO MALICIOUS PROSECUTION

Issue III     WHETHER THE DEFENDANTS ARE ENTITLED TO
              QUALIFIED IMMUNITY

Issue IV      WHETHER THE PLAINTIFF HAS MET HER PLEADING
              BURDEN AS TO THE ALLEGATIONS OF MUNICIPAL
              LIABILITY

Issue V       IN THE SPHERE OF DOMESTIC VIOLENCE, WHETHER A
              POLICE OFFICER HAS A DUTY TO INVESTIGATE BEYOND
              THAT OF SIMPLY TAKING THE WORD OF THE
              COMPLAINANT WHEN SUCH OFFICER IS PRESENTED WITH
              PROOF THAT INDICATES THE COMPLAINANT HAS A
              MOTIVE TO BE UNTRUTHFUL AND IS NOT A RELIABLE
              WITNESS.

Issue VI      WHETHER DECLARATORY RELIEF IS NEEDED IN THIS CASE

Issue VII     WHETHER STATE LAW CLAIMS WERE PROPERLY RAISED
              IN THE COMPLAINT AND WHETHER THE DISTRICT COURT
              ERRED IN FAILING TO EXERCISE JURISDICTION AS TO
              SUCH.

Issue VIII    WHETHER THE PLAINTIFF IS ENTITLED TO PUNITIVE
              DAMAGES AS TO THE INDIVIDUAL DEFENDANT POLICE
              OFFICERS, PEREIRA, NATAL AND MOGULA.

## **NATURE OF THE CASE**

The Plaintiff (a female victim of domestic violence) alleges that when the

Defendants falsely arrested and prosecuted her three (3) times (and one of the

Defendants, Pereira, attempted to make a fourth arrest), they have violated her

rights secured by the Fourth and Fourteenth Amendments of the United States
Constitution, Civil Rights Act of 1871, 42 U.S.C. §1983, and the Constitution and
laws of the State of New York.

It is claimed that the Defendants have knowingly and recklessly abandoned
their duty, imposed by law, to investigate further — beyond merely taking the
word of the abuser-complainant when factors are present that reveal a motive on
the part of the abuser-complainant to file a false complaint with the NYPD — with
such actions on the part of the Defendants being contrary to the principles
delineated in, for example, Mistretta v. County of Suffolk, et al., 5 F.Supp.2d 128
(1998), Bullard v. City of New York, 240 F.Supp.2d 292 (S.D.N.Y. 2003), United
States v. Fisher, 702 F.2d 372 (2nd Cir. 1983) and Oliveira v. Mayer, 23 F.3d 642
(2nd Cir. 1994).  Moreover, despite having notice of such disturbing trend, since at
least the year 2001, where innocent female victims of domestic violence were
falsely arrested because their jealous and possessive husbands filed false
statements with police in retaliation, and despite recommendations being made to
NYPD to implement, for example, the analysis of primary physical aggressor
factors in "retaliatory arrest" situations, NYPD has not adopted a policy to address
"retaliatory arrests."

8

As a result of the above, the Plaintiff was falsely arrested and prosecuted on three (3) occasions. In connection with each of the arrests, the Plaintiff has offered to show evidence to the Defendants that would not only reveal her innocence, but would reveal that the abuser-complainant (Plaintiff's now ex-husband) has been making false statements in retaliation for the Plaintiff's desire to leave him. Irrespective of such, the Defendants have refused to view such evidence, and the Defendants have refused to conduct any investigation and automatically arrested the Plaintiff each time claiming they had no discretion in such cases.

Moreover, the Defendants acknowledged that they believed the Plaintiff was telling the truth but claimed that they had no discretion but to arrest her in such cases.

The District Court (Hon. Alvin K. Hellerstein), without a hearing, and without awaiting any discovery whatsoever, dismissed the Complaint pursuant to Fed.R.Civ.P. 12(c).

## STATEMENT OF FACTS

### July 9th, 2012 – First Arrest

On July 9th, 2012, Plaintiff (Kanderskaya) appeared at the 68th police precinct in Brooklyn, New York. Upon arrival to said precinct, Detective Pereira

9

told Kanderskaya that her husband called the police and said that Kanderskaya stated to him that if he tried to divorce Kanderskaya, she would kill him. (A-11). Kanderskaya immediately denied making such statement and showed Pereira phone text messages between Kanderskaya and her husband that did not evidence any threats but instead showed that Kanderskaya was the one who stated that she no longer wanted to be married to her husband. Id. Furthermore, Kanderskaya stated to Pereira that she had already made arrangements for an alternate place of residence and provided Pereira with a name of a witness to corroborate such. Id. Kanderskaya further stated that her husband was retaliating against her and made a false police complaint. Id. Pereira acknowledged to Kanderskaya that she was the one who tried to escape from her husband. Id. Furthermore, Kanderskaya told Pereira that she was the one who was being emotionally abused by her husband. (A-12).

Moreover, on or about July 9th, 2012, Kanderskaya provided names of witnesses who could corroborate her story. Pereira said to Kanderskaya that he would call them and return. Id. Without contacting the Plaintiff's witnesses, and without conducting any meaningful investigation, Pereira, in violation of his duty to investigate, arrested Kanderskaya without probable cause. Id. The Plaintiff did not consent to being arrested and demanded to know the basis of the arrest. Pereira simply stated that it was Kanderskaya's word against her husband's. Id.

As a result of the above, Plaintiff has spent approximately thirty three (33) hours incarcerated as a result of the arrest of July 9th, 2012. The Plaintiff's criminal case arising out of said arrest was dismissed on or about February 7th, 2013 in her favor. Id.

On or about July 12th, 2012, Kanderskaya called the 68th police precinct in Brooklyn to file a complaint against Pereira but was told that he was on vacation. Id.

**July 21st, 2012 – Second Arrest**

On or about July 21st, 2012, three police officers appeared at the Plaintiff's home residence. The female officer, Natal, told Kanderskaya that she needed to talk. When said officers entered the Plaintiff's home, the Plaintiff was placed under arrest by Natal and was taken to the 68th police precinct in Brooklyn. Id. When Kanderskaya asked what happened, Natal stated that Kanderskaya's husband called the precinct and told police that some unidentified man called him from a blocked telephone number the day before and he heard the Plaintiff in the background screaming that if he tried to divorce her, Kanderskaya would blow up her husband's car. (A-12-13). Kanderskaya immediately denied these allegations and said that she attended a concert the day before in New Jersey. Natal said that Kanderskaya still had access to her phone. Kanderskaya further stated that she was

11

verbally and emotionally abused by her husband and was thinking of leaving him. (A-13). Natal stated, "I understand, and I believe you, but I have no discretion in such cases but to arrest you." Id. Natal further added: "I understand that many women are abused." Id. The Plaintiff stated that she did not consent to being arrested and did not understand why there was no investigation conducted and that simply her now ex-husband's word was being taken as absolute truth. Id. Kanderskaya informed the officers that her husband is making false statements as retaliation for her desire to leave him. However, irrespective of such, the officers did not take further action to investigate and Natal arrested the Plaintiff without probable cause. Id.

Plaintiff was subsequently incarcerated for approximately three (3) days as a result of the above-described second arrest. Id. As the Plaintiff was leaving Riker's Island, she noticed that her husband was waiting for her with another man, her husband's cousin. Kanderskaya's husband's cousin stated that he was "sorry for everything that we have done to you." Id. Kanderskaya became scared and ran back to Riker's Island and told one of the officers that her husband took out an order of protection against her and that she was afraid of being arrested because he was outside waiting for her. Despite making such statements, upon information and belief, nobody at Riker's Island helped the Plaintiff. Id. Upon information

and belief, the criminal case arising out of said arrest was dismissed on or about

February 7th, 2013 in the Plaintiff's favor. (A-14).

On or about July 30th, 2012, the Plaintiff wrote a letter to the office of Mayor

Michael Bloomberg asking for help in relation to the above described; however,

the Plaintiff received no response. Id.

## July 30th, 2012 – Third Arrest

On or about July 29th, 2012, the Plaintiff was walking with her friend when

her husband jumped in front of them and accused the Plaintiff of cheating on him.

Id. The Plaintiff ran into the store (Liberty Bagel & Grocery at 708 9th Ave, New

York, NY 10019) and called the police and explained that her husband has an order

of protection against her and he is trying to get her arrested again by making it

seem as though she is following him.  When the police arrived, they stated, in sum

and substance, after interviewing the surrounding witnesses that everything was

alright and did not take any action. Id.

The police and Detective Mogula did not take any action despite the

Plaintiff's offer to show a video of how her husband was running in and out of the

aforementioned store threatening her. Id.

On or about July 30th, 2012, Kanderskaya saw Detective John P. Mogula's

business card in her door.  Kanderskaya's attorney called Detective Mogula who

13

said that he had to arrest Kanderskaya. Kanderskaya went to the precinct to meet

with Detective Mogula. Detective Mogula said that Kanderskaya's husband called

him on or about July 29th, 2012 at 4:10pm and said that Kanderskaya called him

and threatened to kill him. Kanderskaya told Mogula that her abusive husband

keeps making false claims to the police and that he keeps following her to make it

seem as though she violated an order of protection. Id.

   Kanderskaya said that she did not understand why the police are refusing to

conduct even a minimal investigation. (A-14-15). Kanderskaya offered to show

Detective Mogula video evidence from the above-described grocery store.

Detective Mogula said, "I believe you" and placed Kanderskaya under arrest, to

which Kanderskaya did not consent, without probable cause, and without

conducting an adequate investigation. (A-15).

   While walking to be fingerprinted, Detective Mogula said to Kanderskaya

that he has no discretion but to arrest her given the volume of domestic violence

cases in New York City.

   As a result of the above, the Plaintiff was incarcerated at Riker's Island for

approximately 144 hours. Id. The criminal case arising out of said arrest was

dismissed on or about May 9th, 2013 in the Plaintiff's favor.

14

On or about December 18th, 2012, the Defendant, Pereira, called the Plaintiff requesting to speak to her. The Plaintiff returned Pereira's telephone call; Pereira said to come to the precinct to show "documents" to prove that she was attending court. Upon information and belief, when the Plaintiff called back to verify from Pereira exactly why she needed to appear at the precinct, Pereira angrily stated: "Listen, if you don't show up today, don't make me mad, and when I find you, you're not gonna like it." Upon information and belief, after Pereira made such statements, the Plaintiff was physically shaking and in shock and became fearful for her safety. The Plaintiff subsequently contacted an organization entitled "STEPS" for protection. Upon information and belief, such organization called the 68th police precinct in Brooklyn, New York and left a message for Pereira – he never called back. Id.

Upon information and belief, the New York County's District Attorney's Office was notified that the Plaintiff's husband had a propensity to commit devious and untruthful acts; however, such office failed to take timely action.

Upon information and belief, NYPD has a history of arresting female domestic violence victims without probable cause in situations where the arresting police officer(s) knew, or should have known, that the abuser-complainant has a motive to make or has made a false complaint against the victim of domestic

15

violence in retaliation for an act that the arrested victim has allegedly done against the abuser-complainant in the past. These so called "retaliatory arrests" were studied extensively by the Urban Justice Center (hereinafter "The Family Violence Project" or "study") with such study being published and, upon information and belief, made known to NYPD in 2001. (A-87-90).

The NYPD has implemented a policy, practice and/or custom of instructing police officers not to apply the primary physical aggressor factors to situations where one party has committed a family offense misdemeanor against another household member in response or retribution for a crime committed against him or her in the past, but to place the victim of a false police report under arrest. (A-98). The purpose and/or effect of such direction is to discourage police officers to conduct an investigation where such investigation would be mandated by law, such as in situations where there is motive for a complainant-abuser to file a false complaint with the police in retaliation, thereby preventing a conclusion by police of absence of probable cause to arrest. According to The Family Violence Project, in examining, inter alia, "retaliatory arrests", if the NYPD had conducted a primary physical aggressor analysis in "retaliatory arrest" situations, fifty seven (57) percent (%) of the arrests of victims of domestic violence in these cases would have been prevented. (A-87).

16

## SUMMARY OF ARGUMENT

As detailed below, NYPD has a practice/policy of arresting innocent female victims of domestic violence based simply on a complaint by the abuser-complainant husband. The Plaintiff in this case was arrested three (3) times without any investigation being conducted. The basis for the first arrest as provided by Defendant (Pereira) was that it was the Plaintiff's word against her husband's. At the second and third arrest, the Defendants (Natal and Mogula) all stated that they believed the Plaintiff was telling the truth but they stated they had no discretion in such cases. The Plaintiff offered to show the Defendants exculpatory evidence and made statements to them that put doubt into the complainant-abuser husband's veracity; however, such Defendants refused to even look at the evidence and automatically arrested the Plaintiff each time based solely on some statement made by the Plaintiff's abusive husband.

The Plaintiff asserts that these acts are contrary to the principles delineated in, Mistretta v. County of Suffolk, et al., 5 F.Supp.2d 128 (1998), Bullard v. City of New York 240 F.Supp.2d 292 (S.D.N.Y. 2003), United States v. Fisher, 702 F.2d 372 (2nd Cir. 1983) and Oliveira v. Mayer, 23 F.3d 642 (2nd Cir. 1994).

As will be seen below, if the District Court's reasoning is adopted, then there would not be a need for arrest warrants. If all it takes to deprive somebody of their

17

freedom is a mere call to the police, then probable cause would be present in every

case the complainant makes such a call. If the Plaintiff's now ex-husband, instead

of making three false complaints to the police made twenty three, does that mean

that the Plaintiff would have been arrested twenty three times? Based on the

District Court and Defendants' reasoning it would appear so because the basis for

all arrests was some call to the police and even though the Defendants

acknowledged that they believed the Plaintiff was telling the truth, they did not

conduct any meaningful investigation, refused to look at numerous exculpatory

evidence offered by the Plaintiff, and they said that they had no discretion but to

arrest in such cases.

As the Urban Justice Center Study noted in 2001 that such arrests (termed

"retaliatory arrests") have been happening on a large scale, which is why the

Plaintiff is also seeking declaratory relief.

## ARGUMENT

## POINT I

## THE PLAINTIFF HAS MET HER PLEADING REQUIREMENTS AS TO FALSE ARREST AND THE DISTRICT COURT ERRED IN RULING THAT DEFENDANTS HAD PROBABLE CAUSE TO ARREST THE PLAINTIFF FOR ALL THREE ARRESTS

The applicable standard of review involving a judgment entered on the

pleadings is *de novo*. See Kirkendall v. 18Halliburton, Inc., 707 F.3d 173, 178 (2d

18

Cir. 2013).  When deciding a Rule 12(c) motion for judgment on the pleadings, the

court applies the same standard as is used in deciding a motion to dismiss pursuant

to Rule §12(b)(6).  See Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360,

363 (2d Cir. 2005).  In a motion to dismiss under Rule §12(b)(6), the Court "must

accept as true the factual allegations in the complaint, and draw all reasonable

inferences in favor of the plaintiff."  Albert Furst von Thurn und Taxis v. Karl

Prince von Thurn und Taxis, 2006 WL 2289847 (S.D.N.Y. 2006) (quoting Bolt

Elec., Inc. V. City of New York, 53 F.3d 465, 469 (2d Cir.1995) (citations

omitted)). (See Erickson v. Pondus, 127 S. Ct. 2197(2007)).

Furthermore, "The district court should grant such a motion only if, after

viewing plaintiff's allegations in this favorable light, it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999).  A

court's review of such a motion is limited to the facts stated in the complaint or in

documents attached to the complaint as exhibits or incorporated into the complaint

by reference, and may also consider matters of which judicial notice may be taken.

Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991).  Furthermore,

documents that the Plaintiff relied on in bringing suit may also be considered on

such a motion.  Chambers v. Time Warner, 282 F3d 147, 153 (2d Cir. 2002).

19

Additionally, Rule §8(a)(2) imposes a low pleading burden on the plaintiff,
requiring only a short and plain statement of the claim showing that the pleader is
entitled to relief. In re Southeast Banking Corp., 69 F.3d 1539, 1551 (11th Cir.
1995). Similarly, stated that "The pleadings need not assert all of the plaintiffs'
evidence that the Individual Defendants lacked probable cause, but must merely
allege sufficient facts to put the defendants on notice of the plaintiffs' claims and
the grounds upon which they rest." 240 F.Supp.2d at 299 (citing Swierkiewicz v.
Sorema N.A., 534 U.S. 506, 512 (2002)).

A claim for false arrest under §1983 is substantially the same as a claim for
false arrest under New York Law, consisting of the following elements: 1) the
defendant intentionally confined the plaintiff; 2) the plaintiff was conscious of the
confinement; 3) the plaintiff did not consent to the confinement; and 4) the
confinement was not otherwise privileged. Fincher v. County of Westchester, 979
F.Supp. 989 (S.D.N.Y. 1997) (See also, Jocks v. Tavernier, 316 F.3d 128 (2d Cir.
2003).

In the present case, the Defendants are not disputing that the Plaintiff
(Kanderskaya) met her pleading burden as to the above first three elements of false
arrest; their dispute lies with the fourth element as they are contesting probable

cause only. (A53). It is respectfully being submitted that the Plaintiff (Kanderskaya) has met all of the required elements of false arrest.

It appears to be settled law that the quantum of evidence needed to establish probable cause "must constitute more than **rumor, suspicion, or even a 'strong reason to suspect'** "(emphasis added) United States v. Fisher, 702 F.2d 372, 375 (2nd Cir. 1983) (quoting Wong Sun v. United States, 371 U.S. 471 (1963) and Henry v. United States, 361 U.S. 98 (1959). "Information about criminal activity provided by a single complainant can establish probable cause when that information is **sufficiently reliable and corroborated**." (emphasis added) Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994). The Court went on to point out that before the police could lawfully arrest the suspect, they had a "duty to conduct an investigation into the basis of the witness' report." Id.

The Court in Bullard, echoing the reasoning in Oliveira, declared that the amount of evidence needed to establish probable cause to arrest "**must constitute more than rumor, suspicion, or even a strong reason to suspect**." (emphasis added) 240 F.Supp.2d at 297 (citing United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). The Court in Bullard further added that "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Id at 298

21

(citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  Additionally, the Court

stated that "In contrast, 'where the question of whether an arresting officer had

probable cause is predominantly factual in nature... the existence ... of probable

cause is to be decided by the jury." Id (citing Murphy v. Lynn, 118 F.3d 938, 947

(2d Cir. 1997).

As will be seen from below, the instant case involving the Plaintiff

(Kanderskaya) is factually similar to that of Bullard.  The District Court in Bullard

held as follows: "Taking the facts alleged in the Complaint as true, there were

sufficient indications that the complainants were not reliable sources of probable

cause and the defendants did nothing to investigate the allegations, corroborate

them, or pursue the claims of Mr. Bullard and his lawyer that Mr. Bullard was

innocent.  The defendants fail to account for the myriad indicia of unreliability

cited by the plaintiffs and which are presumed to be true on a motion to dismiss."

Id at 298-299.

Similarly, the District Court, in Mistretta v. Prokesch, spoke on the issue of

reliability in evaluating probable cause.  The District Court stated: "However,

officers are not absolutely privileged to arrest upon a charge by any private

individual who claims to be a victim.  Some people have axes to grind.  Thus, there

is a caveat to the general rule: victim complaints ordinarily establish probable

cause 'absent circumstances that rise doubts as to the victim's veracity." 5

F.Supp.2d 128, 133 (E.D.N.Y. 1998) (Citing Singer v. Fulton County Sheriff, 63

F.3d 110, 119 (2d Cir. 1995) (also see Sankar v. City of New York, 867 F. Supp.2d

297, 306 (E.D.N.Y. 2012). The District Court goes on to explain that "**The most**

**common situation in which such doubts arise is when there exists a prior**

**relationship between the victim and the accused that gives rise to a motive for**

**a false accusation.**" Id. (emphasis added).    "**When such a relationship exists,**

**and is known to the arresting officer before the arrest is made, the complaint**

**alone may not constitute probable cause; the officer may need to investigate**

**further**. Id. (emphasis added).  The Court further noted: "The complaint was

made by one spouse against another in the midst of divorce proceedings.  The risk

of a false accusation was apparent." Id at 134.

As will also be seen below, this exact situation existed in the Plaintiff's

(Kanderskaya) case. Such Plaintiff's now former husband made false statements

to the police in retaliation for the Plaintiff's desire and efforts to leave him because

he was abusive towards her.  These facts were made known to the Defendants,

along with exculpatory evidence.  However, as per their own admissions, the

Defendants (Pereira, Natal and Mogula) arrested the Plaintiff after simply taking

the word of the abuser-complainant and "speaking" to the domestic violence

victim, Plaintiff (Kanderskaya) — the Defendants did nothing else. (A-49, lines

10-11; and A-50, line 1 and lines 8-9.) Defendants further acknowledge that their basis for arresting the Plaintiff was simply taking the word of the Plaintiff's now ex-husband. (A-55, lines 3-6.)

What is even more disturbing, is that the Defendants' justification for depriving the Plaintiff (Kanderskaya) of her freedom three times (and the threat of a fourth arrest by Defendant, Pereira) is their fear of being sued in the future. In the Defendants' moving papers, it says: "In fact, had defendants not arrested plaintiff, they might have subjected themselves to liability for any subsequent injury to Mr. Salem." (A-54, lines 3-4.)

As will be seen below, the cases cited by the Defendants in district court papers on the topic of probable cause are all factually distinguishable from the Plaintiff's situation and actually support the Plaintiff's position.

## A. July 9th, 2012 arrest

In the Defendants' motion to dismiss, Defendant Pereira (hereinafter "Pereira") concedes that the only investigation he has done before arresting the Plaintiff is "speaking" to the Plaintiff: "After speaking with plaintiff on July 9, 2012, Detective Pereira arrested her for second degree aggravated harassment." (A-49, first full ¶1). This statement is consistent with the Plaintiff's factual allegation that

the reason Pereira gave for Plaintiff's arrest is that it was the Plaintiff's word against her now ex-husband. (A-12, ¶19).

Furthermore, the Plaintiff immediately denied the accusations of Pereira, and she informed Pereira that her husband was abusive towards her and is retaliating against her for her desire and attempt to leave him. The Plaintiff then showed Pereira text messages that Pereira acknowledged evidenced that Plaintiff was the one who tried to run away from her abusive husband. Furthermore, the Plaintiff gave Pereira a list of witnesses that would have corroborated her story that she had already moved out and was no longer with her husband, and who would also corroborate the fact that the Plaintiff was the victim of domestic violence.

At this point, as per Mistretta, Bullard, Singer, Fisher, and Oliveira, Pereira should have investigated further — beyond simply taking the word of the complainant ex-husband and "speaking" to the Plaintiff. He should have investigated further because he now had ample evidence that the complainant husband was not reliable witness – Pereira himself acknowledged such by acknowledging the fact that there was evidence that showed the Plaintiff was the one trying to leave her husband which contradicted the husband's account that he wanted a divorce. It is not clear what Pereira means by "speaking" to the Plaintiff

25

since there has been no discovery in this case as the District Court did not allow for such but dismissed the complaint.

One suggestion would be to apply the primary physical aggressor factors; however, NYPD policy specifically instructs the officers not to do that in cases of retaliation (more on this below). It is also noteworthy that in their answer, the Defendants deny the events as described in this paragraph; therefore, since the pertinent facts are disputed, the evaluation of probable cause is a question for the jury.

It is respectfully being submitted that under the above-described case law, there was ample evidence to indicate that the Plaintiff's ex-husband had motive to file a false statement with the police thereby requiring Pereira, a detective, to actually do his job and investigate. However, his investigation consisted of simply "speaking" to the Plaintiff and taking the word of the aggressor-complainant, the Plaintiff's now ex-husband.

It is further being submitted that this case involves facts that the Defendants deny in their answer, facts that establish that there was no probable cause to arrest pursuant to the above case law.

In their motion papers, the Defendants rely on N.Y. C.P.L. §140.10(4)(c). (A-53). However, as this law makes clear, there still must be probable cause for

26

the arrest and the primary physical aggressor factors should have been applied

because there was evidence that the Plaintiff's ex-husband perpetrated acts of

domestic violence as against the Plaintiff.   As N.Y. C.P.L. §140.10(4)(c)

additionally provides: "Notwithstanding the foregoing, when an officer has

reasonable cause to believe that more than one family or household member has

committed such a  misdemeanor, the officer is not required to arrest each such

person.  In such circumstances, the officer shall attempt to identify and arrest the

primary physical aggressor after considering…"

It appears that the Defendants' position is that there is absolutely nothing that

the Plaintiff could have done to prove her innocence and avoid getting arrested.

The Defendants disregarded all of the Plaintiff's evidence and statements, refused

to contact any witnesses, and simply took the word of the abuser-complainant, the

Plaintiff's now ex-husband.  It appears that, additionally, one of their policies or

customs is to automatically effectuate an arrest when somebody makes a statement

that another individual threatened to kill them because the police are afraid of

being sued.

### B. <u>July 21st, 2012 arrest</u>

As to this second arrest, the Plaintiff (Kanderskaya) did not consent to the arrest

and immediately denied the false accusations and notified the Defendant, Natal

(hereinafter "Natal") that she was a victim of domestic violence and that her now ex-husband was making false allegations in retaliation for her desire and efforts to leave him. (A-13, ¶22). Natal made the following statements: "I understand, and I believe you, but I have no discretion in such cases but to arrest you." Id. Natal further added: "I understand that many women are abused." Id. Natal, in her answer, however, denies that she made these statements; therefore, the issue must go to a jury.

Natal doubted the complainant husband's account when she told the Plaintiff that she believed her story; the reason for the arrest was claimed lack of discretion.

Natal acknowledges that the only investigation that she has conducted is take the word of the Plaintiff's ex-husband and simply "speaking" to the Plaintiff. (A-50, lines 1-2). As with Pereira, it is not known what Natal means by "speaking" as the Defendants refused to engage in discovery and filed this motion instead.

It is respectfully being submitted that, as per the above case law, this type of an investigation, or lack thereof, does not constitute probable cause, not even remotely. Under the above-cited case law, Natal had a duty to investigate as there was an apparent motive to lie on the part of the complainant (Plaintiff's now ex-

28

husband), and there was ample evidence to indicate that the complaining witness was not a reliable witness.

### C. Third arrest on or about July 30th 2012

After the Plaintiff was released from jail after her second arrest, she was pursued by her ex-husband outside of Reiker's Island. (A-13, ¶24).   On or about January 29th, 2012, the Plaintiff's ex-husband pursued the Plaintiff in an effort to make it seem as though she (Kanderskaya) was violating the order of protection and threatened to put the Plaintiff in jail for fifteen years. (A-14, ¶26).  The Plaintiff notified the Defendant, Mogula (hereinafter "Mogula") of all of these facts and even offered to provide video proof. Id at ¶27.  Mogula said: "I believe you" and arrested her anyway.  The Plaintiff did not consent to such an arrest. Mogula further stated that he had no discretion but to arrest the Plaintiff given the volume of domestic violence cases in New York City.  (A-15, ¶28).

Mogula acknowledges that the only investigation that he has conducted is take the word of the Plaintiff's ex-husband and simply "speaking" to the Plaintiff.  (A-50, lines 8-9).  As with Pereira and Natal, it is not known what Mogula means by "speaking" as the Defendants refused to engage in discovery and filed this motion instead.

29

As per the above case law, since it was blatantly obvious to Mogula that there was a pre-existing relationship and a motive to file untruthful statements, he had an obligation to conduct a meaningful investigation. At a minimum, he should have viewed the video that the Plaintiff had offered to show him, which would have revealed that the Plaintiff's husband was the aggressor and had clear motive to file a false statement with the police.

In their memorandum of support filed with the district court, the Defendants relied on Miloslavsky v. AES Eng'g Society, but in that case the individual who was arrested exhibited disruptive behavior, disobeyed a police order and there were two witnesses. 808 F. Supp. at 353. Nothing of this sort existed in the present case with the Plaintiff (Kanderskaya).

Defendants also relied on Panetta v. Crowley, but in that case the arresting officer said that he would not effectuate the arrest without first conducting an investigation, and in the course of such investigation, he obtained photos and utilized personal observations of alleged violations. 460 F.3d at 392-393. Nothing even remotely happened in the instant case to justify the Plaintiff's (Kandersaya) arrest.

The Defendants also cited Smith v. City of New York, but that case is also drastically different from the instant case because the facts in Smith involved a

30

rape where the victim gave facts in great detail and there was no reason to question

such victim's veracity. 388 F. Supp. 2d at 182-183. In the instant case, there was

amble reason to question the Plaintiff's ex-husband's veracity at all three arrests.

## D. **Existence of an Order of Protection does not automatically give rise to probable cause.**

The mere existence of an order of protection does not give rise to an automatic

probable cause for any subsequent allegations. See Bullard *supra*; Torino v.

Rieppel, No. 07-CV-1929 (JFB)(ETB) (2009);  Furthermore, such orders of

protection are issued as a matter of course in such cases of alleged physical threats,

without an evidentiary hearing when the individual is first arraigned.

In Bullard, the defendant was arrested for allegedly violating an order of

protection; however, such was not sufficient by itself to establish probable cause,

especially when facts were put forth that cast doubt as to its veracity. In the instant

case, Pereira, Natal, and Mogula sided with the Plaintiff. Pereira said that it looked

like the Plaintiff was the one who tried to get away. Both Natal and Mogula stated

that they believed the Plaintiff. However, the Defendants arrested the Plaintiff

because they were following the unconstitutional policy of arresting individuals in

such situations just because one individual claims that another has threatened them

with physical harm. Pereira exhibited a special malicious intent when he tried to

arrest the Plaintiff for the fourth time.

31

The cases cited by the Defendants in their memorandum of law on this point are all distinguishable. (See A-54-55), For example, Defendants rely on Carthew v. County of Suffolk, but in that case, there was no dispute that the order of protection was violated because the individual who was arrested admitted to the police that he was outside of the building where his wife worked. 709 F. Supp. 2d at 198.

Defendants next rely on Dudley v. Torres, but in that case the court made an explicit finding that there was no reason to question the veracity of the complainant. Likewise, Defendants rely on Spruill v. Levy, but in that case violation of the order of protection was undisputed and the individual being arrested resisted removal efforts of the police.

Defendants also relied on Otero v. Jennings, but in that case the arresting officer actually went to the apartment and actually witnessed the perpetrator in the apartment in violation of the order of protection. 698 F. Supp. at 44.

32

## POINT II

## THE DEFENDANTS DID NOT HAVE PROBABLE CAUSE TO ARREST THE PLAINTIFF FOR ALL THREE ARRESTS AND THE PLAINTIFF HAS MET HER PLEADING REQUIREMENTS AS TO MALICIOUS PROSECUTION

The applicable standard of review involving a judgment entered on the pleadings is *de novo*. See Kirkendall v. 18Halliburton, Inc., 707 F.3d 173, 178 (2d Cir. 2013). It is respectfully being submitted that the Plaintiff (Kanderskaya) has met all of the required elements of malicious prosecution. The only element that the Defendants challenge in their motion is the existence of probable cause; therefore, the above-reasoning under Point I is incorporated into this section.

## POINT III

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The applicable standard of review involving a judgment entered on the pleadings is *de novo*. See Kirkendall v. 18Halliburton, Inc., 707 F.3d 173, 178 (2d Cir. 2013). As the Court in Bullard noted: "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 240 F.Supp.2d 292 at 300 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

33

The Court in <u>Bullard</u> further declared that "The right not to be arrested without probable cause is a clearly established right." <u>Id</u>. Furthermore, "an officer has qualified immunity for the alleged false arrests if either it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree on whether the probable cause test was met.

Based on the reasoning in the above points, it becomes clear that the Defendants did not have any basis to arrest the Plaintiff. The Plaintiff offered the Defendants evidence that would not only prove her innocence, but would provide enough of a basis to arrest her ex-husband. However, instead of conducting any investigation, the Defendants simply arrested the Plaintiff because such was their policy, and they did not want to be sued. There is nothing "arguable" about this as the Defendants' motion papers explicitly state so.

**POINT IV**

**THE PLAINTIFF HAS MET HER PLEADING BURDEN AS TO THE ALLEGATIONS OF MUNICIPAL LIABILITY**

The applicable standard of review involving a judgment entered on the pleadings is *de novo*. <u>See</u> <u>Kirkendall v. 18Halliburton, Inc.</u>, 707 F.3d 173, 178 (2d Cir. 2013). The Court in <u>Candelario v. City of New York</u> states: "Monell v. Department of Social Services, <u>436 U.S. 658</u> (1978), established that in order to sustain a § 1983 claim against a municipality, a plaintiff must demonstrate that "the

34

action that is alleged to be unconstitutional implements or executes a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by

[the municipality's] officers." Id. at 690." No. 13-1621-cv (2d Cir. Nov. 7, 2013).

The Court added: "Municipal liability may also be established by showing a

widespread practice of unconstitutional conduct or deliberate indifference in

training municipal employees resulting in constitutional violations. See, e.g.

Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)" Id.

Additionally, another way to impose municipal liability is to show that a

pattern of abusive conduct (or expressions of inclination toward such abusive

conduct) among officers, so widespread as to support an inference that it must have

been known and tolerated by superiors. Jones v. Town of E. Haven, 691 F.3d 72,

82 (2d Cir. 2012).

It is respectfully being submitted that the Plaintiff's complaint clearly sets

forth allegations as to the municipality, City of New York. (A-16, ¶¶31 and 32. It

is alleged that the NYPD has implemented a policy, practice and/or custom of

instructing police officers not to apply the primary physical aggressor factors to

situation where one party has committed a family offense misdemeanor against

another household member in response or retribution for a crime committed

against him or her in the past, but to place the victim for a false police report under

arrest. (A-98). This category of arrests are referred in the Complaint as "Retaliatory Arrests." (A-16, ¶32).

In the instant case, even if the Defendants (Pereira, Natal and Mogula) believed that the Plaintiff (Kanderskaya) has committed a family offense misdemeanor, the policy should have been written such that the officers should have applied primary physical aggressor factors to determine who was the primary physical aggressor especially in situations such as the instant case where there is clear motive for the complainant to make false statements to police in retaliation for the efforts taken by the individual who was arrested to protect herself. The tragedy of this case is that the Plaintiff was innocent, and offered proof of her innocence, and there was not even probable cause to believe that the Plaintiff did anything wrong.

Additionally, the Plaintiff relied upon the following document in bringing this lawsuit, such document is also referenced in the Complaint at ¶¶31 and 32: an extensive study conducted by the Urban Justice Center, entitled "The Family Violence Project." This documents demonstrates how widespread "retaliatory arrests" have been and made specific recommendations to NYPD, such as to apply primary physical aggressor factors to "retaliatory arrest" situations. (A-87-90).

It is respectfully being submitted that the Defendants' conduct (i.e. simply taking the word of the abuser-complainant even in a situation where the defendants knew that there was a clear motive to file a false police report) is consistent with the above-mentioned written policy.

In addition to the written policy, there appears to be a wide-spread custom of such automatic arrests of which the municipality knew or must have known, which as per Jones *supra* constitutes as another basis to impose municipal liability. Id relating to "Retaliatory Arrests."

Furthermore, Defendants' motion papers appear to concede that they have a policy/custom of automatically effectuating an arrest whenever a complainant simply makes a statement that his wife has threatened to kill him. It does not seem to matter to the police whether the individual being arrested is offering to show them evidence that she is the victim of domestic violence and that the complainant is making false allegations in retaliation to her desire and efforts to leave him. Their only concern appears to be with being sued if they do not effectuate the arrest and something happens to the complainant. (A-54, lines 3-4).

If the Plaintiff in this case had not gotten a divorce, then her ex-husband would, in all likelihood, continue to call the police and make false allegations and the Plaintiff would continue to be falsely arrested.

37

## POINT V

### DECLARATORY RELIEF IS NEEDED IN THIS CASE

The applicable standard of review involving a judgment entered on the pleadings is *de novo*. See Kirkendall v. 18Halliburton, Inc., 707 F.3d 173, 178 (2d Cir. 2013). On the issue of declaratory relief, it is respectfully being submitted that such is absolutely necessary in this case. Based on the Defendants' moving papers, their position is clear: the Defendants believe that simply taking the word of the abuser-complainant, even in situations where the officers have evidence and actual knowledge that the abuser-complainant has a clear motive to be untruthful, they must effectuate an arrest. It is being submitted that based on the reasoning above, such is a clear violations of both constitutional, statutory and case law.

The study reveals that as of 2001, a great multitude of female victims, such as the Plaintiff (Kanderskaya), of domestic violence have suffered as a result of being victims of retaliatory arrests. The fact that there has not been another such study since 2001 does not mean that this problem has disappeared. Based on the undersigned's conversation with one of the co-authors of said study (Mary Haviland), a follow up study would have been conducted had it not been for lack of funding. The events that transpired as to the Plaintiff (Kanderskaya) is proof that retaliatory arrests are continuing to occur and if the Court does not intervene, jealous and abusive husbands will continue to file false statements with the police

38

because they know that the police do not investigate such claims and almost automatically arrest the individual against whom a police report is filed regardless of whether such individual offers to show them evidence that not only would exculpate such individual but would provide probable cause to arrest the complainant who makes such false complaint in retaliation.

## POINT VI

## STATE LAW CLAIMS WERE PROPERLY RAISED IN THE COMPLAINT

The standard of review of the district court's decision not to exercise jurisdiction over state claims is that of abuse of discretion. See Singer v. Fulton County Sheriff, 63 F.3d 110, 114 (2nd Cir. 1995). Plaintiff incorporates the above reasoning in this section and submits that state law claims were properly brought pursuant to 28 U.S.C. §1367(a). (See A-10, 22-23). Defendants' sole reason for attacking state law claims is predicated on their arguments in relation to the Plaintiff's federal claims. (A-60-61). As such, the undersigned incorporates all the points above pertaining to the Plaintiff's federal claims into this section.

## POINT VII

### THERE IS NO BASIS TO DISMISS ALLEGATIONS RELATING TO INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER 42 U.S.C. §1983

The remaining allegations, namely for intentional and negligent infliction of emotional distress under 42 U.S.C. §1983 (A-21-22) must likewise stand as the Defendants' motion in the district court does not address them at all.

## POINT VIII

### PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AS TO THE INDIVIDUAL DEFENDANT POLICE OFFICERS, PEREIRA, NATAL, AND MOGULA

It is being submitted that the Plaintiff properly raised allegations as to punitive damages against Pereira, Natal, and Mogula. (A-23, ¶¶68-69). The Defendants, knowing that the Plaintiff was being mistreated by her ex-husband, consciously disregarded evidence that would prove that the Plaintiff committed no wrongdoing, all in violation of their constitutionally imposed duty to investigate, especially in situations where the complainant has motive to make false statements to the police. Additionally, the Plaintiff's complaint on July 30th, 2012, begging for protection, to the Mayor's office, went unanswered.

There is an additional charge of malice as against Pereira. Pereira, upon information and belief, on or about October 23rd, attempted to lure the Plaintiff to

40

the 68th Precinct in an attempt to arrest her again. (A-15, ¶29). Moreover, Pereira made multiple threats to the Plaintiff causing her to fear for her safety. Id.

## Conclusion

It is respectfully being submitted that the conduct of the Defendants and the reasoning of the District Court cannot be held to be in accordance with the United States Constitution. Otherwise, if the lawyers (and the "STEPS" organization) had not gotten involved, and the Plaintiff's now ex-husband had continued to make phone calls to the police falsely stating that the Plaintiff threatening him, the Plaintiff would be arrested each time if the District Court's reasoning is followed. After how many arrests would the Fourth Amendment state that the police would actually have to conduct an investigation before depriving an individual (a victim of domestic violence in this case) of her freedom, and not simply state that they believe the Plaintiff but have no discretion but to arrest in such cases?

It is further being submitted that each time the police contacted the Plaintiff they had already made up their minds to arrest her because such is their policy in domestic violence situations as such relate to "retaliatory arrests." This is evident when they refused to take any steps to investigate any of the exculpatory evidence offered by the Plaintiff and simply decided to arrest after the Plaintiff's now ex-husband called the police.

41

As a result of the foregoing, it is respectfully being requested that the

District Court should be reversed (except as to Defendant Commissioner Kelly),

Defendants' motion for a judgment on the pleadings should be denied, and this

case should be remanded back to the District Court.


Respectfully Submitted,



Garry Pogil (*Attorney for the Plaintiff-Appellant*)
112 West 34th Street, 18th Floor
New York, NY 10120
Email: garry.pogil@gmail.com
Tel: 917-593-1466
Fax: 646-349-3468



To:

Larry Sonnenshein (*Attorney for Defendants-Appellees*)
New York City Law Department
100 Church Street
New York, NY 10007

## CERTIFICATION PURSUANT TO
### Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 8,532 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a) (5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using [Microsoft Word 2013] in Times New Roman 14pt.

Dated: June 4th, 2014

Garry Pogil (*Attorney for the Plaintiff-Appellant*)
112 West 34th Street, 18th Floor
New York, NY 10120
Email: garry.pogil@gmail.com
Tel: 917-593-1466
Fax: 646-349-3468